# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOE HAND PROMOTIONS, INC.,**

                **Plaintiff,**

**v.**                                      **Case No:   6:15-cv-1706-Orl-41GJK**

**SHADY N. ATTIA and SRT8**
**ENTERPRISE, LLC,**

                **Defendants.**

---

## REPORT AND RECOMMENDATION

       This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. No. 17)** |
| **FILED:** | **May 11, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    <u>BACKGROUND.</u>

       On October 9, 2015, Joe Hand Promotions, Inc. (the "Plaintiff") filed a complaint (the "Complaint") against Shady N. Attia and SRT8 Enterprise, LLC ("SRT8") (collectively, the "Defendants"), alleging for violations the Federal Communications Act of 1934, 47 U.S.C. § 605 (Count I) and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553 (Count II).   Doc. No. 1.   In the Complaint, Plaintiff alleges it is the exclusive owner of the distribution and broadcast rights to "UFC 153: Silver v. Bonner" (the "Broadcast"), which took place on October 13, 2012, and was broadcast via closed circuit television and an encrypted satellite signal to

Plaintiff's customers, who paid Plaintiff a sublicense fee to carry the Broadcast.   Doc. No. 1 at ¶¶ 2, 14-15.[1]   Plaintiff alleges that the Defendants, without paying Plaintiff a license fee, knowingly and unlawfully "intercepted, received and/or descrambled [the Broadcasts'] satellite signal" and exhibited the Broadcast in Defendants' restaurant and/or bar, the Giza Wine & Hookah Lounge (the "Lounge").   Doc. No. 1 at ¶¶ 6, 17.   Plaintiff further alleges that Defendants knowingly utilized an illegal satellite receiver or other device to intercept and descramble the Broadcast signal.   *Id*. at ¶ 18.[2]   Based on its allegations that Defendants willfully violated 47 U.S.C. ¶ 605(a), which prohibits the unauthorized transmission and exhibition of interstate communications, Plaintiff seeks statutory damages under 47 U.S.C. ¶¶ 605(e)(3)(C)(i)(II) and enhanced statutory damages under 605(e)(3)(C)(ii).   Plaintiff also requests attorneys' fees and costs under 47 U.S.C. § 605.[3]

On December 30, 2015, Defendants were each served with summons and a copy of the Complaint.   Doc. Nos. 10-11.   On March 10, 2016, pursuant to Rule 55(a), Federal Rules of Civil Procedure, the Clerk entered default against the Defendants.   Doc. Nos. 15-16.   On May 11, 2016, Plaintiff filed a Motion for Default Judgment (the "Motion"), a Memorandum of Points and Authorities In Support of the Motion (the "Memorandum of Law"), and a Declaration of Plaintiff's

---

[1] Plaintiff "is a distributor of sports and entertainment programming to commercial establishments (i.e. bars, restaurants, casinos)."   Doc. No. 19 at 2.

[2] Plaintiff acknowledges there are "multiple illegal methods" for intercepting and descrambling a satellite signal and, without the benefit of discovery, Plaintiff is uncertain which precise method Defendants' utilized.   Doc. No. 1 at ¶ 18.   Plaintiff maintains "it is logical to conclude that Defendants[ ] used an illegal satellite receiver, misrepresented its business establishment as a residence, or removed an authorized residential receiver from one location to a different commercial location to intercept Plaintiff's Broadcast."   Doc. No. 1 at ¶ 18.

[3] In its separate Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Doc. No. 19), Plaintiff elects to abandon its claim under 47 U.S.C. § 553 because "an aggrieved plaintiff may recover damages under only one section," § 553 or § 605.   Doc. No. 19 at 6 (citing *Kingvision Pay-Per-View Corp., LTD v. Wright*, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450, at *2 (M.D. Fla. Oct. 27, 2006)).

Counsel in support of the Motion and Plaintiff's request for attorneys' fees (the "Yanger Declaration").   Doc. Nos. 17-19.   In the Memorandum of Law, Plaintiff elects to proceed solely under 47 U.S.C. § 605 and seeks a default judgment as to Count I.   Doc. No. 19 at 6.

Attached to the Memorandum of Law is an October 19, 2012, affidavit of Victoria Taylor, which avers the following:   On October 13, 2012, she entered Defendants' Lounge at approximately 10:00 p.m.   Doc. No. 19-4 at 1.   Ms. Taylor observed three (3) television sets in the Lounge, all of which were displaying the Broadcast.   *Id*.   Ms. Taylor watched nearly the entire Broadcast on Defendants' televisions, and her affidavit describes each fight with particularity.   *Id*.   In Ms. Taylor's estimation, the Lounge has a capacity of approximately 50 to 60 people.   Doc. No. 19-4 at 2.   Ms. Taylor conducted three headcounts of patrons in the Lounge, while viewing the Broadcast.   *Id*.   She observed 12 people on the first count, 8 people on the second, and 4 people on the third count.   *Id*.   Ms. Taylor further states that she took a video of a portion of the Broadcast as it was being exhibited on the Defendants' televisions.   *Id*.

Pursuant to 47 U.S.C. § 605, Plaintiff requests a total judgment of $27,520.00 in damages and fees, jointly and severally, against the Defendants, and representing:

1)   statutory damages of $5,500.00, under 47 U.S.C. § 605(e)(3)(C)(i)(II);

2)   enhanced statutory damages of $20,000.00, under 47 U.S.C. § 605(e)(3)(C)(ii);

3)   costs of $520.00; and

4)   attorneys' fees of $1,500.00, under 47 U.S.C. § 605(e)(3)(B)(iii).

Doc. No. 19 at 7, 14, 16.[4]   With respect to its claim for statutory damages of $5,500.00, Plaintiff states that the Defendants, or their agents, intentionally intercepted the Broadcast's signal for the purpose of exhibiting it to their patrons.   Doc. No. 19 at 7.   In support of same, Plaintiff attaches

---

[4] The Yanger Declaration also requests a judgment totaling $27,520.00.   Doc. No. 18 at 2.

the affidavit of Joe Hand, JR., Plaintiff's president, who avers that intercepting Plaintiff's encrypted satellite signal without a sublicense agreement cannot be accomplished mistakenly, innocently, or accidentally.   Doc. No. 19-1 at ¶ 9.   Plaintiff also attaches a screen shot from the Lounge's Twitter account, showing the Defendants advertised the Broadcast.   Doc. No. 19-5 at 2. Thus, Plaintiff alleges that Defendants intentionally, and without a sublicense agreement, intercepted the Broadcast and profited therefrom in an unknown amount.   Doc. No. 19 at 8-9. Moreover, Plaintiff alleges that Defendants' misconduct caused it to lose sublicense agreements and profits therefrom and also caused Plaintiff to incur the "considerable expense" for detecting and prosecuting acts of signal piracy, which also caused damage to its goodwill and reputation. Doc. Nos. 19 at 8-10; 19-1 at ¶¶ 4, 6, 11, 13.   Thus, Plaintiff requests that the Court exercise its discretion under § 605(e)(3)(C)(i)(II) to award it $5,500.00 in statutory damages.   Doc. No. 19 at 10-11.

Plaintiff asserts that 47 U.S.C. § 605(e)(3)(C)(ii) provides the Court with the discretion to award enhanced statutory damages up to $100,000.00 for willful acts of signal piracy perpetuated for commercial advantage or financial gain.   Doc. No. 19 at 11.   By virtue of their default, Plaintiff contends the Defendants have admitted the unlawful Broadcast was committed willfully for the purpose of commercial advantage or financial game.   Doc. No. 19 at 11.   Accordingly, Plaintiff requests an award of $20,000.00 in enhanced statutory damages in order to "fairly achieve the statutory goals of restitution and deterrence."   Doc. No. 19 at 14.

## II.   <u>LEGAL STANDARD</u>.

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default.   Fed. R. Civ. P. 55 (a).   The mere entry of a default by the

Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, before entering a default judgment, the Court must find that there is a sufficient basis in the pleadings for the relief requested. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015) (same).[5] Thus, the standard for reviewing a default judgment motion is "akin to [the standard] necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")).

Complaints need not contain detailed factual allegations to support a default judgment motion, but there must be "more than an unadorned, the defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, when seeking a default judgment, a plaintiff should provide the Court with points and authorities containing citations to authority showing that the Plaintiff's claim or claims include allegations of all the necessary elements required for entitlement to relief." *Johnson v. Cate*, 2009 WL 2151370, at *2 (E.D. Cal. July 17, 2009). In short, it is the Plaintiff's burden to demonstrate, in a motion for default judgment, that its pleading's factual allegations are legally sufficient to establish one or more of its claims and to entitle it to the specific relief requested. *Id.*

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

III.    **ANALYSIS.**

A.  **Liability.**

The Federal Communications Act of 1934 provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.   No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or of the benefit of another not entitled thereto.   No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).   The Federal Communications Act of 1934, as amended, prohibits the interception, descrambling, and exhibition of encrypted satellite signals.  *See generally United States v. Howard*, 13 F.3d 1500, 1501-02 (1994) (affirming conviction under § 605 for unauthorized interception of encrypted satellite signals).   Pursuant to 47 U.S.C. § 605(e)(3)(A), a private cause of action exists for violations of 47 U.S.C. § 605(a), and "full costs", as well as attorneys' fees, are available to "an aggrieved part who prevails."   47 U.S.C. § 605(e)(3)(B)(iii).

In this case, Plaintiff's well-pled allegations of fact as to Count I establish that Defendants, or their agents, violated 47 U.S.C. § 605(a) by willfully, and without authorization, intercepting and/or descrambling the Broadcast's satellite signal.   Doc. No. 1 at ¶¶ 17-18, 20.   Defendants then willfully exhibited the Broadcast on televisions for the purpose of obtaining a commercial advantage and/or private financial gain.   *Id*.   Thus, the Complaint establishes a violation of 47

U.S.C. § 605(a).   In addition, Plaintiff's allegations are supported by Ms. Taylor's affidavit (Doc. No. 19-4 at 1-2); Mr. Hand's Affidavit (Doc. No. 19-1 at 1-7); and the screen shots from the Lounge's Twitter account, advertising the Broadcast could be viewed in the Lounge (Doc. No. 19-5 at 2).   Based on the foregoing, Plaintiff has demonstrated the Defendants unlawfully intercepted or received the unauthorized Broadcast and willfully used that communication for the Defendants' benefit.   Accordingly, Plaintiff is entitled to a final default judgment as to Count I.

### B.  Damages.

A plaintiff may elect to pursue actual or statutory damages and, in this case, the Plaintiff moves for an award of statutory damages ($5,500.00) and enhanced statutory damages ($20,000.00) under 47 U.S.C. § 605(e)(3)(C)(i)(II) and (3)(C)(ii).   Doc. Nos. 1 at ¶ 22; 18 at 2; 19 at 7-14.

### 1.  47 U.S.C. § 605(e)(3)(C)(i)(II).

Under 47 U.S.C. § 605(e)(3)(C)(i)(II), Plaintiff requests an award of statutory damages in the amount of $5,500.00.   Doc. Nos. 1 at ¶ 22; 18 at 2; 19 at 7-11.   Section 605(e)(3)(C)(i)(II) provides: "the aggrieved party may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000 as the court considers just. . . ."   47 U.S.C. § 605(e)(3)(C)(i)(II).   "The Eleventh Circuit has not addressed a uniform formula for calculating damages under section 605."   *Joe Hand Promotions v. McBroom*, 2009 WL 5031580, at *4 (M.D. Ga. Dec. 15, 2009).   "Some courts will award damages as a flat sum," while other courts will "award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition."   *Id.* (citing *J&J Sports Productions v. Arboleda*, Case No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *6 (M.D. Fla. Oct. 27, 2009)).   Still other courts will, "[w]hen the

exact number of patrons is known…base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court." *J&J Sports Productions v. Ribeiro*, 562 F. Supp. 2d 498, 501-02 (S.D. N.Y. 2008). "This number varies widely from $20[.00] to $300[.00] [per patron], although most courts set a number around $50[.00]." *Id.* at 502.

On October 13, 2012, there were a maximum of 12 patrons in the Lounge at the time of the Broadcast, and the Lounge has the approximate capacity of 50-60 people. Doc. No. 19-4 at 2 (Ms. Taylor's Affidavit). Plaintiff has also provided its Rate Card, which contains the sublicensing fees charged by Plaintiff for similar events. Doc. No. 19-3 at 1. According to the Rate Card and Mr. Hand's Affidavit, the Defendants could have purchased a sublicense agreement for $1,100, which is the fee for establishments with the capacity for 51 to 100 patrons. Doc. Nos. 19-1 at ¶ 7; 19-3 at 1.

Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), the Court must award Plaintiff at least $1,000.00 in statutory damages. *Id.* If the Court only awards the Plaintiff the cost of sublicense fee ($1,100.00), then the Court's award would not account for Defendants' profits from the Broadcast. A bar owner could violate 47 U.S.C. § 605(a), retain all profits and commercial advantage related thereto and, only if subsequently caught by the provider, simply pay the $1,100.00 sublicense fee at a later date. Such a result would not accomplish the intent of the statute because it would essentially incentivize parties to violate the statute by simply delaying the cost of the broadcast service. A flat sum of $2,000.00 would have the effect of recouping the sublicense fee ($1,100.00) and disgorging Defendants of any unknown profits gained from the Broadcast ($900). *See McBroom*, 2009 WL 5031580, at *4 (M.D. Ga. Dec. 15, 2009) (some courts award a flat sum). Accordingly, based on the facts of this case, it is recommend that

Plaintiff is entitled to an award of $2,000.00 under Section 605(e)(3)(C)(i)(II).

## 2. 47 U.S.C. § 605(e)(3)(C)(ii).

Under 47 U.S.C. § 605(e)(3)(C)(ii), Plaintiff also requests $20,000.00 in enhanced statutory damages.   Doc. Nos. 1 at ¶ 22; 19 at 11-14.   Section 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).   Thus, enhanced statutory damages are available against a defendant who willfully violates § 605(a) for commercial advantage or private financial gain.   *Id.*

In determining the amount of enhanced damages to award under § 605(e)(3)(C)(ii) "[t]he Court must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business."   *Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009).    For first time violators of § 605(a), many courts, under similar fact patterns, have multiplied the amount of statutory damages awarded under § 605(e)(3)(C)(i)(II) by three (3) to compute the amount of enhanced damages.   *See Kingvision Pay-Per-View Corp., Ltd. V. Wright*, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450, at *3 n.8 (M.D. Fla. Oct. 27, 2006) (awarding enhanced damages in the amount three times the actual damages for first known violation of § 605(a) ($2,075.00 x 3)); *McBroom*, 2009 WL 5031580 at *6 ("award[ing] enhanced damages amounting to three times the statutory damages of $1,100[.00], which equals $3,300[.00]"); *Ribeiro*, 562 F. Supp. 2d at 502 ("the Court will award three times the statutory damages for enhanced damages of $4,500[.00]" ($1,500 x 3)).

The undersigned finds the cases cited above persuasive.   Plaintiff has not presented the

Court with any information suggesting that Defendants have previously violated § 605(a). Thus, since the Defendants intentionally intercepted, received, descrambled, advertised and exhibited the Broadcast without authorization for the Defendant's own commercial advantage and financial benefit, it is recommended that Plaintiff be awarded three (3) times the amount recovered under 47 U.S.C. § 605(e)(3)(C)(i)(II). Accordingly, it is recommended that Plaintiff be awarded $6,000.00 in enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii).

### C. Attorneys' Fees and Costs.

Section 605(e)(3)(B)(iii) provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails [under § 605(a)]." Plaintiff requests an award of $1,500.00 in attorneys' fees and $520.00 in costs. Doc. No. 19 at 16. In support of those amounts, Plaintiff's counsel, William L. Yanger, Esq., provides an affidavit averring that Plaintiff's attorneys expended an estimate of 6 hours of work on this case at a blended hourly rate of $250.00 per hour, and Plaintiff incurred costs of $400.00 for the filing fee and $120.00 in service of process costs. Doc. No. 18 at ¶¶ 8-9. In determining the reasonableness of hourly rates and hours worked, the Court may rely on its own knowledge of the prevailing market's rates for similar work and hours expended for the same. *Norman v. Housing Auth. Of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In this case, the undersigned finds the requested blended hourly rate and hours worked for this type of work in the Orlando market are reasonable. Moreover, Mr. Yanger's affidavit establishes the reasonableness of the costs requested. Doc. No. 18 at ¶ 9. Accordingly, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), it is recommended that the Court award Plaintiff $1,500.00 in attorneys' fees and $520.00 in costs, jointly and severally, against the Defendants.

IV.     **CONCLUSION.**

Based on the foregoing, it is recommended that the Motion (Doc. Nos. 17-19) be **GRANTED in part and DENIED in part** as follows:

1.  The Motion be **GRANTED** to the extent the Court direct the Clerk to enter default judgment against Defendants, jointly and severally, in the total amount of $10,020.00, representing:

    a.  $2,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); and

    b.  $6,000.00 in enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii); and

    c.  $1,500.00 in attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii); and

    d.  $520.00 in costs under 47 U.S.C. § 605(e)(3)(B)(iii); and

2.  The Motion be otherwise **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.  **In order to expedite the final disposition of this matter, if Plaintiff has no objection to this report and recommendation, it may promptly file a joint notice of no objection**.

Recommended in Orlando, Florida on August 26, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy